IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00161-REB

UNITED STATES OF AMERICA,

                Plaintiff,

v.

1.     GEOFFREY H. LUNN, and
2.     JAIME J. BEEBE,

                Defendants.

## GOVERNMENT'S UNOPPOSED MOTION FOR
## PARTIAL CONSOLIDATION OF SENTENCING PROCEEDINGS

The United State of America, by and through its undersigned counsel, without opposition of the defendants and with the consent of the United States Probation Office, moves this Court for an order partially consolidating sentencing proceedings of the defendants in this case for the purpose of calculating the defendants' respective applicable advisory sentencing guideline ranges and to address issues pertinent to the determination of restitution, including, but not limited to, the identification of victims entitled to restitution, respective amounts owed to victims, and the defendants' respective liability defendants for restitution. By and through this motion, the government proposes that sentencing be conducted in three distinct phases, two of which would be consolidated, as follows:

(a) An initial joint and consolidated sentencing proceeding which would be devoted, *inter alia*, to addressing Sentencing Guideline issues and determining the defendants' respective applicable sentencing guideline ranges; entertaining and ruling upon objections to common aspects of the defendants' presentence investigation reports (PSIRs), such as depictions and characterizations of the offense conduct in this case;

1

(b) Individualized sentencing proceedings separately conducted with respect to each defendant which would address sentencing factors unique to each defendant, at which proceedings the Court would entertain sentencing guideline departure and sentencing variance arguments and arguments concerning the application of statutory sentencing factors under 18 U.S.C. § 3553(a) with respect to each defendant, and at the conclusion of which proceedings the Court would pronounce sentence upon each defendants in all aspects except with respect to matters of restitution and forfeiture; and

(c) Pursuant to 18 U.S.C. § 3664(d)(5), a joint and consolidated proceeding, to be conducted no later than ninety days from the conclusion of the individualized sentencing proceedings, addressed to resolving all issues respecting restitution and forfeiture, as to each defendant (but not with respect to third parties that may claim an interest in any forfeitable property), at which time the Court would address and determine, *inter alia*, the amounts and property to be forfeited by each defendant, the overall amounts of restitution owed by each defendant, and the identities and specific restitution amounts owed to particular victims.

In support of the motion, the government states as follows:

1. On May 14, 2015, defendant Lunn, pursuant to a written plea agreement, entered guilty pleas to one count of wire fraud (Count 8) and one count of engaging in monetary transactions in property derived from specified unlawful activity (Count 41) in the second superseding indictment in this case (DE 81, 82).[1] These offenses of conviction arose from a common fraudulent scheme, relating to purported high yield investment programs offered through a bogus financial institution called Dresdner Financial, and undertaken by the defendants Lunn and Beebe together. As related in the plea agreement, the defendants, pursuant to this scheme, raised in excess of $5.8 million from a combination of 72 individual investors or groups of investors, of which 61 individual investors or groups of investors suffered collective losses totaling approximately $5,124,795 (DE 82, Plea Agreement, Part I, ¶ C.1; Part V, ¶¶ B, J, U). Under his plea agreement with the government, defendant Lunn agreed to criminal forfeiture in the form of a money judgment and specific property in a total amount not exceeding these collective

---

[1] "DE __" refers to docket entries in this case.

losses and to restitution in particular amounts to specific victims to be determined by the Court at the time of sentencing (*id.* at Pt. I, ¶¶ B, C.1).  Defendant Lunn's plea agreement further contemplated that he would assist the government in the investigation and prosecution of others, in exchange for consideration by the government of a U.S.S.G. § 5K1.1 sentencing guideline departure motion, which cooperation, it was understood and anticipated, would include testimony by Lunn at a trial of defendant Beebe. At the time of Lunn's change of plea hearing, the Court agreed to continue Lunn's sentencing without a set date while his assistance to the government was ongoing, so that the government and Lunn could be in a position to more fully apprise the Court of the nature, extent and significance of his assistance before imposition of his sentence (DE 81, 82, Plea Agreement, Part I, ¶ G).

    2.  On January 19, 2016, pursuant to his own written plea agreement, defendant Beebe entered a guilty plea to a separate wire fraud count of the second superseding indictment arising from the same fraudulent scheme (Count 23), thereby resolving the government's case against him without trial (DE 142, 144, 145).  Defendant Beebe's plea agreement, in support of his wire fraud guilty plea, relied on substantially the same body of stipulated facts as set forth in Lunn's plea agreement; identified the same collective losses to Dresdner Financial investors as had been set forth in the Lunn plea agreement; and identified substantially the same restitution and forfeiture obligations for Beebe as had been identified for Lunn (DE 82, 145). The Beebe plea agreement also set forth offense level sentencing guideline calculations for Beebe's wire fraud offense of conviction that were substantially similar to the offense level calculations for Lunn's wire fraud offense of conviction and identified sentencing guideline positions for the government and Beebe that were similar, if not identical, to the guideline positions taken by the government and Lunn in Lunn's plea agreement (*compare* DE 82, Lunn Plea Agreement, Part VI, ¶¶ A-G, *with* DE 145,

Beebe Plea Agreement, Part VI ¶¶ A-G). The Court set defendant Beebe's case for sentencing (DE 144) and directed the United States Probation Office to conduct a presentence investigation and prepare a report in advance of that proceeding.

      3.      On February 10, 2016, the government filed a status report with the Court advising the Court that, with the entry and acceptance of Beebe's guilty plea, Lunn's assistance to the government had substantially been completed and that Lunn's case, in the parties' view, was ready for sentencing (DE 155). The government, in this status report, also advised the Court it intended to file the instant motion seeking partial sentencing consolidation and that the motion was without opposition of the defendants and the United States Probation Office (*id*.).

      4.      Defendant Lunn's case now ready for sentencing, defendant Beebe's sentencing having yet to take place, and presentence investigation reports having yet to be prepared (in the case of Lunn) or finalized (in the case of Beebe), the defendants' cases are ideally postured for sentencing consolidation at this point. A partial consolidation of sentencing proceedings, in the manner sought by this unopposed motion, is warranted. Consolidating and jointly conducting an initial sentencing proceeding to address sentencing guideline issues and common factual questions pertaining to offense conduct would promote judicial efficiency and avoid inconsistent determinations of common factual and legal questions, thereby promoting overall fairness of the sentencing process. As indicated above, as evident from a comparison of their parties' respective sentencing guideline computations as set forth in their plea agreements with the government, in determining the applicable offense levels for both defendants' offenses of conviction, the Court will necessarily be faced with determining whether and how the same offense level adjustments apply under substantially the same set of circumstances for each defendant:

      ---      The applicable loss figure for guideline purposes, a central specific offense

characteristic for the calculation of the defendants' wire fraud offense level under U.S.S.G. § 2B1.1(b)(1), is an issue common to both defendants and, at this juncture, as reflected in the guideline computation section of their respective plea agreements, neither defendant disputes that the loss figure designated by the government (*i.e*., $5,124,795, representing the total collective losses sustained by investors or investor groups sustaining net losses). Notwithstanding, any objection or issue taken by either defendant as to this figure is likely to have equal bearing as to the other defendant.

-- An offense level adjustment based on the number of victims of the defendants' fraudulent scheme and the nature of their financial hardship, pursuant to U.S.S.G. § 2B1.1(b)(2), also presents common issues with respect to both defendants, and since the victims at issue in this case were essentially victimized by one jointly conducted scheme, it is likely that a consistent application of the adjustment would dictate that it apply or not apply equally and in the same manner with respect to both defendants.[2]

-- Both defendants, in their respective plea agreements, have taken issue with the applicability of a two-level "sophisticated means" adjustment to their offense level scores pursuant to U.S.S.G. § 2B1.1(b)(10)(C). The government has taken the same position with respect to this adjustment with respect to both defendants: It has taken no position.  Since the defendants

---

[2] Defendant Lunn, in his plea agreement, is scored as receiving a 4-level increase to his offense level score pursuant to this specific offense characteristic based on the number of victims being more than 50 but less than 250 in number, two levels higher than the victim adjustment scored for defendant Beebe in his plea agreement.

The discrepancy is owing to a change in the language and substance of the guideline provision between the time when Lunn's and Beebe's respective plea agreements were presented to the Court. During that time, Section 2B1.1(b)(2) was re-written to place less weight on the number of victims in determining the number of offense levels to be applied and more weight on the degree of financial hardship suffered by victims and the number who suffered "substantial financial hardship."   The number of victims and the degree of financial hardship suffered by them should, for the purpose of applying this specific offense characteristic offense level adjustment, remain the same with respect to both defendants, and the newer version of this adjustment should be the one applied to Lunn's offense level calculations.   As a consequence, this offense level adjustment will likely be determined in the same way for both defendants.

undertook their fraudulent scheme together, determining whether this adjustment applies should raise common issues with respect to both defendants and is likely to engender the same type of arguments, geared towards assessing the sophistication of the scheme itself, by both defendants.

--      Finally, whether the defendants should receive an offense level adjustment for their respective roles in the offense, pursuant to U.S.S.G. § 3B1.1, presents common issues of fact and law best suited for determination in a consolidated setting.  The government, in the defendants' respective plea agreements, has taken the position that both defendants should receive a three offense level increase in their offense level scores because each occupied a managerial or supervisory role in offense conduct that was "otherwise extensive."  Both defendants have objected to this adjustment as it pertains to each of them.  While it is conceivable that some opposition to this adjustment will be mounted based on arguments geared toward assessing each defendant's role and relative culpability in the scheme, these assessments and comparisons will necessarily raise common issues, as the defendants' offense conduct was jointly undertaken and they worked together and so would necessarily be compared to one another; what the Court would be determining as to role and level of culpability as to one defendant, in other words, will likely influence how the Court views the role and culpability level of the other.   Notwithstanding, there remains a basic, threshold issue pertaining to the applicability of this adjustment that undersigned government counsel understands will likely be raised in this case: whether the defendants engaged in their fraudulent scheme with the requisite number of "criminal participants" and whether the scheme could be considered to be "otherwise extensive," as both these phrases are understood and construed under this guideline provision.  The issue, focusing on who else was involved in the scheme and in what way, will necessarily raise common issues and likely engender common arguments.

5. A consolidated and jointly conducted initial sentencing phase will enable arguments about all of these common issues to be presented at one time, thereby avoiding needless replication and duplication of the arguments and affording the Court the benefit of considering and assessing all of them, before being required to make rulings and determinations about common sentencing guideline issues.

6. Consolidation of sentencing proceedings devoted to addressing issues of restitution and forfeiture is warranted for similar reasons. The criminal proceeds generated by this fraudulent scheme – a sum which corresponds to the collective losses of the net losing investors of the scheme – will be the same figure with respect to both defendants and derived from common factual circumstances. The money judgments to be imposed with respect to both defendants, which flow from this figure, are also therefore likely to involve common issues. Similarly, as regards to restitution, the identity of the victims of this jointly undertaken fraudulent scheme and the nature and extent of their cognizable losses for purposes of restitution are issues common to both defendants: Who constitutes a victim in this case and how much each victim is owed in restitution as a result of the scheme is not likely, under the circumstances, to differ as to defendant. From both an efficiency and fairness standpoint, arguments as to these issues ideally should be raised, considered and ruled upon at the same time. And whether each defendant should shoulder responsibility for restitution to a particular victim or set of victims in equal or differing measures, and should be held jointly and severally liable for restitution, 18 U.S.C. § 3664(h), are things, as a matter of fairness and efficiency, that should also be determined with respect to both defendants at the same time, with the benefit of argument beforehand by all concerned. As the case with the sentencing guideline computation issues, addressing these common issues in a consolidated fashion will minimize the risk of inconsistent rulings based on incomplete presentations and

arguments. Further, in assessing whether restitution should be addressed in a consolidated fashion, the Court, it is respectfully submitted, should be mindful the statutory rights afforded putative victims to be heard on the issue of restitution and other issues in the case.  Under both federal statute and federal criminal procedure rules, crime victims are entitled, *inter alia*, to be reasonably heard by the Court at sentencing concerning all matters of relevance to them, 18 U.S.C. § 3771(a)(4); Fed.R.Crim.P. 32(i)(4)(B), 60(a)(3), and are specifically afforded a right to full and timely restitution. 18 U.S.C. § 3771(a)(6).  As indicated above, and as conveyed to the United States Probation Office, the government, to date, has identified as many as 72 individual investors and investor groups who invested money with the defendants pursuant to the fraudulent scheme in this case.   As conveyed to the United State Probation Office, the number of investors and putative victims may even be greater, however, as many of the individuals or entities providing funds to the defendants apparently did so in a representative capacity. The Court therefore may face a situation in which multiple victims will wish to be heard.  The government submits that, in order for the Court to best "fashion [ ] reasonable procedures" that would give effect to the rights of these victims, 18 U.S.C. § 3771(d)(2); Fed.R.Crim.P. 60(b)(3), and in order otherwise to avoid potential needless repetition, the Court seek to accommodate putative victims by allowing them to be heard together in one proceeding involving all parties concerned in this case.

       7.       A consolidated proceeding devoted to addressing restitution and forfeiture need not be integrated with the determination and pronouncement of other aspects of the sentences to be imposed upon the defendant; resolution of these issues may follow imposition of sentence in other respects.   The Court is not precluded by express rule or statue from deferring entry of preliminary forfeiture, and indeed final forfeiture orders, adjudicating the rights of third parties in forfeitable property takes place following the imposition of sentence. Fed.R.Crim.P. 32.2(c).   Further, with

respect to restitution, by statute, the Court is expressly authorized to defer final determinations of victim losses for a period of up to ninety days following sentencing, if victim losses are not ascertainable ten days prior to sentencing and the Court is so advised by the prosecution or the probation officer. 18 U.S.C. § 3664(d)(5). Here, as conveyed to the assigned probation officer, the government's efforts to identify fully and with certainty the individuals and entities who were the real investors in the scheme – and not simply conduits for the investment funds and proxies for the owners of the funds – has been laborious and is ongoing, involving inquiries that are pending with groups of individuals throughout the United States and, in some instance, in foreign countries. There is a significant likelihood that the process may not be completed, and hence victim losses fully ascertainable, by the time that both the proposed initial consolidated and individualized sentencing proceedings are completed.[3]

8. Undersigned government counsel has consulted with counsel for both defendants concerning the substance of this motion and has been advised that neither defendant opposes the motion, with the qualification and request that the contemplated individualized sentencing proceedings be conducted by the Court at separate times so that each defendant is not physically present during the other's proceeding. Undersigned counsel has also consulted with Senior United States Probation Officer Kyla Hamilton, the probation officer assigned to conduct the presentence investigations with respect to both defendants in this case, and has been advised that the United States Probation Office does not oppose the motion. Probation Officer Hamilton

---

[3] The government acknowledges that, under a strict and literal reading of the language of Section 3664(d)(5), the Court may need to wait until ten days before the date that sentencing proceedings are otherwise scheduled to be completed, in order to defer final restitution determinations under this statutory provision. In order to accommodate such a reading of the statute, the government would propose that the Court set this proposed third, consolidated stage of sentencing proceedings only provisionally at this juncture and await a report from the government and the probation office concerning the status of victim loss determinations before confirming the setting and ordering a final restitution determination to be deferred pursuant to Section 3664(d)(5).

requests, however, that the Court not set initial sentencing proceedings any earlier than nine weeks from the date of this motion so that she may have adequate time to complete her presentence investigation concerning defendant Lunn and prepare and submit her report with respect to his case.

WHEREFORE, the United States respectfully requests that the Court grant this motion and enter an order partially consolidating sentencing proceedings of the defendants in this case, such that sentencing is conducted in the following manner and respects:

(a)   An initial joint and consolidated sentencing proceeding to address, *inter alia*, Sentencing Guideline issues and objections to common aspects of the defendants' presentence investigation reports ;

(b)   Individualized sentencing proceedings with respect to each defendant for the purpose of imposing sentence upon each defendants in all aspects except with respect to matters of restitution and forfeiture; and

(c)   A joint and consolidated proceeding, to be conducted no later than ninety days from the conclusion of the individualized sentencing proceedings, addressing all remaining issues respecting restitution and forfeiture as to each defendant.

    Respectfully submitted,

    JOHN F. WALSH
    United States Attorney


    s/Kenneth M. Harmon
    By:   Kenneth M. Harmon
    Assistant U.S. Attorney
    1225 Seventeenth Street, Suite 700

        Denver, Colorado 80202
Tel. No. (303) 454-0100
Fax No. (303) 454-0402
E-mail: kenneth.harmon@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of April, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David L. Owen, Jr.
davidowen@lodopc.com

Scott T.Varholak
Assistant Federal Public Defender
Scott_varholak@fd.org

Edward R. Harris
Assistant Federal Public Defender
Edward_harris@fd.org

        s/ Kenneth M. Harmon
KENNETH M. HARMON
Assistant United States Attorney
U.S. Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Tel. No. (303) 454-0100
Fax No. (303) 454-0402
E-mail: kenneth.harmon@usdoj.gov