IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 14-cr-00161-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

GEOFFREY H. LUNN,

       Defendant.
_____

**DEFENDANT'S LUNN'S RESPONSE AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**
_____

      Geoffrey Lunn, by and through undersigned counsel, submits the following Response and Objections to the Presentence Investigation Report ("PSI"):

**I.**    **Mr. Lunn objects to the sophisticated means enhancement set forth in Paragraph 72.**

      The Probation Department has added a two-level enhancement for sophisticated means. *See* PSI, ¶ 72. This enhancement applies when "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). "'[S]ophisticated means' means **especially** complex or **especially** intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. §2B1.1, comment (n. 9(B)) (emphasis added). In determining whether to apply this enhancement, the Court must look only to Mr. Lunn's own intentional conduct, as opposed to the offense as a whole. *See* U.S.S.G. App. C., Supplement at 113 (in discussing the reason for Amendment 792's change to the sophisticated means

definition, concluding that the defendant's own intentional conduct provides a better reflection on culpability than looking to the entire scheme).  Thus, even if the scheme itself is sophisticated, the enhancement would not apply if Mr. Lunn's intentional conduct did not render the scheme sophisticated.

Here, the scheme was not especially complex or especially intricate.  At its core, the scheme involved Mr. Lunn or Mr. Beebe making promises to the victims that the victims would receive absurdly high rates of returns on their investments.  The victims then sent money to Dresdner, and Mr. Lunn and Mr. Beebe largely pocketed the money.[1]  Mr. Lunn then made various false representations to investors leading these victims to believe that a payout was imminent.  Essentially, this was a fairly simple theft and there was nothing especially complex or intricate about the scheme.

Despite the relative simplicity of the scheme, the Probation Department relies upon three items that it believes support the sophisticated means enhancement: (1) the use of a fictitious entity (Dresdner), (2) the transferring of money through Western Union or MoneyGram using fictitious payee names, and (3) the establishment of foreign corporations and bank accounts.  None of these facts, however, justify applying the sophisticated means enhancement to Mr. Lunn.

First, the fact that Dresdner was created in no way makes the scheme especially complex or intricate.  Conceivably, the use of a corporate entity could make a scheme more complex; if the individuals were able to shield their personal names or contact

---

[1] Some of the money was returned to investors, and at least one investor actually received a profit from the investment.

information through the use of a corporate entity, the use of that corporate entity may make it easier to conceal the offense and, thereby, support a sophisticated means enhancement. Here, however, Mr. Lunn engaged in no such concealment.[2] The victims had Mr. Lunn's real name and email address, and some even had his personal cellular telephone number. The use of the Dresdner entity in no way hindered attempts by either the victims or, ultimately, law enforcement in contacting and finding Mr. Lunn. As a result, such use does not contribute to a sophisticated means enhancement.

Second, the transferring of money through Western Union does not support the enhancement. Obviously, these transfers did not assist in executing the offense; the victims had sent the money to Dresdner through wire transfers and the Western Union orders were simply a way to transfer that money from Mr. Lunn to Mr. Beebe. Thus, the use of money orders could only support a sophisticated means enhancement if they were used to conceal the offense.

Again, however, the Court may only look to Mr. Lunn's intentional actions. Mr. Lunn did not use the money orders to conceal his involvement in the offense; as detailed above, the investors already had his name and contact information. Moreover, Mr. Lunn was only acting on the instructions of Mr. Beebe. Mr. Beebe told Mr. Lunn where to send the payments and to whom the payments should be sent. Mr. Lunn had absolutely no involvement in creating the fictitious payees. As a result, at least with

---

[2] Again, since the 2015 Amendment to Section 2B1.1, the Court must only focus on Mr. Lunn's intentional actions. To this point, Mr. Lunn was not the one who created Dresdner. Instead, Mr. Beebe created the fictitious Dresdner entity before Mr. Lunn ever became involved in the scheme.

respect to Mr. Lunn, the use of money orders does not support a sophisticated means enhancement.

Finally, while the creation of foreign companies and bank accounts may ordinarily justify a sophisticated means enhancement, it does not in this case. Mr. Lunn created these accounts at Mr. Beebe's direction. Ultimately, however, very little money went into these accounts.[3] Given the limited amount of money that went into these accounts, the creation of them did not materially assist in concealing the offense. As a result, the creation of foreign companies and bank accounts does not support the sophisticated means enhancement.

In short, the scheme involved a relatively simple theft whereby Mr. Lunn and Mr. Beebe obtained money by promising ridiculously high rates of returns. Mr. Lunn and Mr. Beebe then simply pocketed the victims' money. None of the Probation Department's justifications for the sophisticated means enhancement supports a finding that Mr. Lunn's actions rendered the scheme especially complex or intricate. As a result, the enhancement does not apply.

**II.   Mr. Lunn objects to the aggravating role enhancement set forth in Paragraphs 74-76.**

Mr. Lunn objects to the aggravating role enhancement set forth in Paragraphs 74-76. United States Sentencing Guideline 3B1.1(b) provides for a three-level enhancement "[i]f the defendant was a manager or supervisor . . . and the criminal

---

[3] As set forth in the Plea Agreement, a total of $30,377 was sent to foreign entities. *See* Statement of Facts, L.3. This reflects only slightly more than one-half of one percent of the total loss in this case ($30,377/$5,124,795 - .0059).

activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Relying upon the "otherwise extensive" prong of this definition, the Probation Department asserts that the enhancement applies. Recognizing that Mr. Beebe asserted control over Mr. Lunn at times, the Probation Department nevertheless concludes that "Beebe and Lunn appear to be, largely, equally culpable as managers or supervisors of the criminally responsible affiliates . . . ." PSI, ¶ 75.

In concluding that the supervisor/manager enhancement applies, the Probation Department relies primarily upon the actions of Mr. Lunn and Mr. Beebe in establishing the scheme. Specifically, with respect to Mr. Lunn, the Probation Department relies upon the following facts: (1) Mr. Lunn and Mr. Beebe recruited affiliates and prepared documents to sign up affiliates (including reviewing those documents), (2) Mr. Lunn and Mr. Beebe explained the program to the affiliates, (3) Mr. Lunn and Mr. Beebe marketed Dresdner's investment programs, (4) Mr. Lunn would often answer investors' questions, at the direction of the affiliates, (5) Mr. Lunn would serve as a point of contact for the affiliates, and (6) Mr. Lunn was portrayed as Dresdner's vice president. Importantly, however, none of these actions reflects a supervisory or management role.

The Tenth Circuit has made clear that the supervisor/manager enhancement only applies if the defendant "exercised some degree of control over others involved in the commission of the offense or [] must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Roberts*, 14 F.3d 502, 523 (10th Cir. 1993) (*quoting United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir. 1990)). Indeed, the Tenth Circuit has refused to apply the enhancement when the defendant lacked

"decision-making authority or control" over a subordinate. *Id.* Here, the record establishes that Mr. Lunn helped to explain the program to affiliates, answered affiliates' questions, and would often act as a point of contact for investors brought into the program by the affiliates. But, Mr. Lunn did not control the affiliates' actions as required for application of the enhancement. Rather, the affiliates acted more like independent agents, over whom Mr. Lunn lacked any hiring or firing capabilities.[4] Given Mr. Lunn's lack of decision-making control or authority, the supervisor/manager enhancement does not apply.

The application of this enhancement is especially problematic once the Court considers that Mr. Lunn must have "supervise[d] at least one other criminal participant." *United States v. Gallant*, 537 F.3d 1202, 1242 (10th Cir. 2008). To qualify as a criminal participant, the person must be criminally responsible for the commission of the offense. *See id.* (quoting U.S.S.G. § 3B1.1, comment (n.1)). Thus, for the enhancement to apply, Mr. Lunn must have had decision-making authority or control over another individual who was criminally responsible for the offense.

Here, the only individual to have admitted to knowing that the Dresdner investments were, in fact, a scheme, was Darlene Bishop.[5] Mr. Lunn did not bring Ms.

---

[4] Indeed, in many respects the affiliates were akin to recruiters. Just as a legal recruiter gets paid a fee for bringing a qualified attorney to a law firm, the recruiters received a fee for bringing investors to Dresdner. Yet, nobody would claim that the law firm (or its hiring partner) was a manager/supervisor of the legal recruiter.

[5] Ms. Bishop pled guilty to this offense after pleading guilty to an unrelated scheme. Her sentence with relation to the Dresdner offense ran concurrent to her sentence on the other scheme. She would later file a habeas petition claiming that she did not know that the Dresdner program was a fraud and that, indeed, she personally

Bishop into the program; indeed, Ms. Bishop told the Federal Bureau of Investigation ("FBI") that she had not spoken with Mr. Lunn prior to becoming an affiliate. *See* Bates FBI_502. Moreover, despite being interviewed twice by the FBI (resulting in 16 pages of reports, *see* Bates FBI_499-507; FBI_776-783), Ms. Bishop never described Mr. Lunn as having any control or authority over her actions. As a result, because Mr. Lunn did not exercise control or authority over any criminal participant, the supervisor/manager enhancement does not apply.

### III.   Mr. Lunn objects to the statement in Paragraph 149 that Mr. Beebe's threats began after the fraudulent scheme.

Finally, Mr. Lunn objects to the statement in Paragraph 149 that Mr. Beebe's threats began after the fraudulent scheme. As Mr. Lunn explained both in depositions and in FBI interviews, he was threatened by Mr. Beebe before he began the scheme and only involved himself in the scheme because of those threats. The recording referenced in Paragraph 149 is simply one example of those threats.

---

invested in the Dresdner program.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Scott T. Varholak
SCOTT T. VARHOLAK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Scott_Varholak@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that on September 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

      Kenneth Harmon, Assistant U.S. Attorney
      Email: Kennth.Harmon@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

      Geoffrey Lunn     (via Mail)

      s/ Scott T. Varholak
      SCOTT T. VARHOLAK
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone:  (303) 294-7002
      FAX:  (303) 294-1192
      Scott_Varholak@fd.org
      Attorney for Defendant