IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 14-cr-00161-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

GEOFFREY H. LUNN,

       Defendant.

_____

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION IN SUPPORT OF FOUR YEAR SENTENCE**
_____

COMES NOW DEFENDANT Geoffrey Lunn, by and through counsel, Edward R. Harris and The Office of the Federal Public Defender, and moves this Court for a sentence of no more than four years of prison, either by downward variance or combination of variance and departure[1]. In support of this request, Defendant states:

**Introduction:  What Mr. Lunn Seeks and Why**

Mr. Lunn seeks a sentence of no more than four years prison.  That sentence is supported by three key facts: (1) his lack of a criminal history; (2) his comparatively lesser role in this offense relative to the codefendant (Mr. Lunn did not come up with the scheme to defraud); and (3) his significant cooperation in this case, which led to the prosecution of codefendant Beebe, the brains behind the scheme.

---

[1] The Plea Agreement contemplates a downward departure under USSG § 5K1.1.

Concededly, people lost money due to Mr. Lunn's actions. Still, four years is sufficient punishment and enough time to achieve statutory sentencing goals. By contrast, a longer sentence would be greater than necessary to achieve those goals.

**Personal History**

Nothing about Mr. Lunn's personal history warrants a sentence higher than four years. Now 60, Mr. Lunn has spent virtually his entire life as a law-abiding man. It was only in 2010, when his involvement with Mr. Beebe led to his committing the crimes to which he has pleaded guilty, that he veered from the straight and narrow path of his life for the previous half a century.

Those who know him well attest to Mr. Lunn's general good character. For example, according to his now estranged wife, Mr. Lunn has always been a good father, and she feels as if she is still "living in a state of shock" after learning of his involvement in the criminal activity. She told Probation that he always wanted the best for his family and children, and believes he has been punished for his behavior because his family has been "completely messed up." She informed Probation that the family lost everything as a result of his involvement in this case.

**Nature and Seriousness of the Offense/Protection of the Public**

Mr. Lunn does not minimize the seriousness of the offense. What he did caused people to lose money and suffer emotionally. He deceived them and led them to believe that they would receive benefits when in fact he had stolen their money. Nothing changes those facts. Still, considering the complete picture reveals that: (1) Mr. Lunn did not mastermind the scheme (Mr. Beebe did); (2) At times, after the offense

conduct began, Mr. Lunn pushed forward under threat from Mr. Beebe; (3) Mr. Lunn did not conceal his identity from the victims; and (4) This was not a violent crime.

Given Mr. Lunn's honorable life before this crime, his age, and the low likelihood of recidivism for people like him, the chance of his committing further crimes against the public is low. The need to incarcerate Mr. Lunn for a longer time than four years to protect the public from him is also low.

Simply put, as a 60-year-old, first-time federal offender, Mr. Lunn has an exceptionally low risk of recidivism. Both the age of an offender and his criminal history status are powerful predictors of the likelihood of recidivism. Indeed, the Sentencing Commission has itself recognized that (1) recidivism rates decline dramatically with age, and (2) first-time offenders are even less likely to reoffend than defendants with a limited criminal history who also fall within Criminal History Category I. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at Ex. 9 (May 2004) [hereinafter *Measuring Recidivism Report*]; U.S. Sentencing Commission, *Recidivism and the "First Offender,"* at 13- 14 (May 2004) [hereinafter *First Offender Report*].

The Commission's research has, for example, demonstrated that a 20-year-old defendant in Criminal History Category I has a 29.5% chance of reoffending, while a 44-year-old defendant with the same criminal history has only a 6.9% chance of recidivating. *Measuring Recidivism Report* at Ex. 9. A 60-year-old's recidivism rate is lower still.

Likewise, with respect to first offenders, the Commission has found that offenders with zero criminal history points have a recidivism rate of just 11.7%. Offenders with

3

just one criminal history point have double the recidivism rate at 22.6%. *First Offender Report* at 13-14.  Notably, Mr. Lunn has no criminal history points.

Because, the Commission has failed to revise the Guidelines to take either age or first-offender status into account, a downward variance is appropriate. The Commission clearly recognized the advisability of revising the Guidelines to take these factors into account. *See First Offender Report* at 1-2 (identifying goal of "refin[ing] a workable 'first-offender' concept within the guideline criminal history structure); *Measuring Recidivism Report* at 16 (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if incorporated into the criminal history computation"). Despite that recognition, however, in the years since publishing its *Fifteen Year Report*, the Commission has taken no action toward implementing such revisions.

In response to the Commission's inaction, a growing number of courts have themselves taken both age and first-offender status into account when fashioning an appropriate sentence under 18 U.S.C. § 3553(a). *See, e.g., United States v. Darway,* 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding sentence in child pornography case as reasonable where district court granted downward variance on basis of defendant's first-offender status); *United States v. Hamilton*, 323 Fed. Appx. 27 at 31 (2nd Cir. 2009) (holding that "the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming a below-guidelines sentence where the district court's only reason for the variance was that the defendant's age made it unlikely that he would again be involved in another violent crime); *United*

4

*States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Cabrera, "with zero criminal history points are less likely to recidivate than all other offenders); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (explaining that sentence of 262 months – as opposed to Guidelines sentence of 324 to 405 months – constituted "sufficient, but not excessive, deterrence" for 44-year-old defendant); *United States v. Nellum*, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (explaining that age of offender is relevant to § 3553(a) analysis, even if not ordinarily relevant under the Guidelines, and granting variance to 57-year-old defendant); *United States v. Ward,* 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first – *i.e.*, the charged – act).

Geoffrey Lunn is 60-years-old and has no history of criminal behavior. He has no criminal history points. The Sentencing Commission has recognized that an offender within his age range – and with his minimal criminal record – is extremely unlikely to recidivate. Given Mr. Lunn's extraordinarily low risk of recidivism, a within-guidelines sentence is simply greater than necessary to protect the public from the small chance of his committing future crimes.

A lengthy sentence would only serve to provide "just deserts" at a very high cost to the American taxpayer, while hindering Mr. Lunn's ability to make restitution to his victims. Moreover, it is the certainty, not the severity, of punishment that best serves as a deterrent. Contrary to popular belief, longer sentences do not equate with added deterrence. In fact, research has consistently shown that while the certainty of being

5

caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."  Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).  "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of evidence."  *Id.*  (see also Zvi Gabby, *Exploring the Limits of the Restorative Justice Paradigm*: *Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.")

**Rehabilitation**

Mr. Lunn needs no additional rehabilitation.  He is a good man who did a bad thing.  Significantly, he has already demonstrated remorse for his actions and begun to right his wrongs by taking the huge step of cooperating with the government in the prosecution of Mr. Beebe.  Indeed, that prosecution likely could never have occurred without Mr. Lunn's assistance.

**Deterrence**

**Specific Deterrence**

Specific deterrence would not be served by a sentence exceeding four years.  As already discussed, age and lack of criminal history are the best predictors of recidivism.  Thus, the odds of Mr. Lunn re-offending, regardless of the sentence imposed, are low.

**General Deterrence**

General deterrence similarly will not be affected by a lengthy sentence.  The public is so far removed from Mr. Lunn's situation as to make an increased sentence unimportant in the life of an average citizen.  Nor is this a highly publicity case.  Mr.

6

Lunn submits that anyone who might become aware of this case would be just as deterred by a four year sentence as a nine year sentence.  *See United States v. Courtney*, 76 F.Supp.3d 1267, 1306 (D.C. N.M. 2014) (While acknowledging that harsher sentencing will, at least to some extent, result in fewer new offenders, the court acknowledges in footnote 13 that "[a]n avalanche of criminological studies have determined that this theoretical symmetry between severity of punishment and certainty of detection does not exist in the real world").

**Punishment**

Mr. Lunn is sixty years old.  He will be in his mid-sixties upon release from a sentence of four years.  Any longer a sentence will put his release date close to or well into his seventies.  Upon release, he will be a convicted felon.  He face deportation to England.  Given those consequences and his age, further punishment is unnecessary.

Respectfully submitted,

VIRGINIA GRADY
Federal Public Defender


s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant

7

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2017, I electronically filed the foregoing **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION IN SUPPORT OF FOUR YEAR SENTENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Kenneth Harmon, Assistant U.S. Attorney
Email: Kennth.Harmon@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Geoffrey Lunn        (via Mail)


s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant